UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00638-TBR

JOSEPH W. WOLZ                                                    PLAINTIFF

v.

AUTO CLUB PROPERTY-CASUALTY INSURANCE CO.              DEFENDANT

## Memorandum Opinion and Order

This matter is before the Court upon Defendant Auto Club Property-Casualty Insurance Co.'s motion for summary judgment.   [DN 14.]   Plaintiff Joseph Wolz has responded, [DN 15], and Auto Club has replied, [DN 16].   Fully briefed, Auto Club's motion is ripe for adjudication.   For the following reasons, that motion [DN 14] is GRANTED.

## I. Facts and Procedural History

The relevant facts are undisputed.   Plaintiff Joseph Wolz was riding a motorcycle on Highway 44 in Bullitt County, Kentucky, when Danny Catlett, also on a motorcycle, pulled out in front of him.   [DN 1-2 at 2.]   To avoid colliding with Catlett, Wolz laid his motorcycle down, causing him significant injury.   [*Id.*] Allstate, Catlett's insurer, offered Wolz its policy limits of $50,000.00.   [*Id.*]

Wolz's motorcycle was insured by Progressive, but his policy did not provide underinsured motorist (UIM) benefits.   [DN 14-3 at 1-2.]   Wolz did, however, own five other vehicles, each insured by Auto Club.   *See* [DN 14-4.] The policy provides $100,000.00 UIM coverage per vehicle, for a total stacked UIM coverage of $500,000.00.   [*Id.* at 4-8.]   Wolz notified Auto Club of Allstate's offer of policy

limits and informed Auto Club that he would be making a UIM claim against his Auto Club policy.  [DN 1-2 at 2.]  Auto Club denied UIM coverage under the owned-but-not-insured (also known as the "owned-but-not-scheduled") exclusion, discussed below.

Wolz filed suit against Auto Club in state court, seeking to recover UIM benefits as well as for Auto Club's alleged bad faith in denying his claim.  *See* [*id.*] Auto Club removed the suit to this Court.  [DN 1.]  The Court stayed proceedings pending the outcome of a Kentucky Supreme Court case that appeared to be directly on point, *Philadelphia Indemnity Insurance Co. v. Tryon*, 502 S.W.3d 585 (Ky. 2016).  [DN 8.]  After that court handed down its decision, Auto Club moved for summary judgment.  [DN 14.]  Wolz responded, [DN 15], and Auto Club replied, [DN 16].

## II. Standard of Review

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial."  *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001);

*Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, Auto Club must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of each of Wolz's claims. Fed. R. Civ. P. 56(c); see *Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming Auto Club satisfies its burden of production, Wolz "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

### III. Discussion

#### A. Underinsured Motorist Coverage

Kentucky's Motor Vehicle Reparations Act (MVRA) supplies the Commonwealth with "a comprehensive motor-vehicle insurance system." *Philadelphia Indemnity Ins. Co. v. Tryon*, 502 S.W.3d 585, 588 (Ky. 2016) (citing KRS 304.39-010). Among other things, the MVRA requires "drivers to purchase a baseline level of motor-vehicle liability insurance," and "addresses other forms of coverage incidental to the mandatory liability coverage." *Id.* (citing KRS 304.39-110).

3

Pertinent to this case is a type of coverage called underinsured motorist coverage. The MVRA defines an underinsured motorist as "a party with motor vehicle liability insurance coverage in an amount less than a judgment recovered against that party for damages on account of injury due to a motor vehicle accident." KRS 304.39-320(1). "Insurers are required to make UIM coverage 'available upon request to its insureds,' but 'subject to the terms and conditions of such coverage not inconsistent with this section.'" *Tryon*, 502 S.W.3d at 588 (quoting KRS 304.39-320(2)) (emphasis removed). In other words, by the terms of KRS 304.39-320(2), "UIM coverage [is] optional, supplemental insurance." *Id.*

In contrast, insurers may not exclude a similar but distinct category of coverage, uninsured motorist (UM) benefits. The applicable statute defines an "uninsured motor vehicle" as:

> an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency; an insured motor vehicle with respect to which the amounts provided, under the bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such motor vehicle, are less than the limits described in KRS 304.39-110; and an insured motor vehicle to the extent that the amounts provided in the liability coverage applicable at the time of the accident is denied by the insurer writing the same.

KRS 304.20-020(2). Further, "[n]o automobile liability or motor vehicle liability policy . . . shall be delivered or issued . . . unless coverage is provided therein . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." KRS 304.20-020(1). Therefore, Kentucky law "expressly forbids [automobile and motor-vehicle

4

insurance] contracts that do not include UM benefits." *Tryon*, 502 S.W.3d at 588-89.

## B. *Philadelphia Indemnity Insurance Co. v. Tryon*

In *Tryon*, the Kentucky Supreme Court considered whether a particular type of coverage exclusion from UIM benefits, the owned-but-not-scheduled exclusion, is enforceable as a matter of public policy. *Tryon*, 502 S.W.3d at 586. There, the plaintiff, Tryon, was riding his motorcycle when he was struck and injured by another vehicle. *Id.* Tryon's motorcycle and his two other personal vehicles were insured by Nationwide, Encompass Indemnity Company, and Philadelphia Indemnity Insurance Company, respectively. *Id.* All three policies included UIM coverage. *Id.* Nationwide, the insurer of Tryon's motorcycle, did not dispute coverage. *Id.* However, both Encompass and Philadelphia refused to pay UIM benefits on the basis of the owned-but-not-scheduled exclusions contained in their policies. *Id.* Such exclusions "deny UIM coverage for operating or occupying other vehicles that Tryon owned but were not identified in the policy." *Id.* at 587. The Encompass policy excluded coverage when:

> [a] covered person is operating or occupying a motor vehicle owned by, leased by, furnished to, or available for the regular use of a covered person if the motor vehicle is not specifically identified in this policy under which a claim is made.

*Id.* The policy's definition of a "covered person" "specifically exclude[d] . . . insureds 'while occupying, or when struck by, a vehicle owned by you which is not insured for this coverage under this policy.'" *Id.*

The Philadelphia Policy contained a "similar" but "structurally different" exclusion. *Id.* That policy provided:

> A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:
>
>> 1. By an "insured" while "occupying," or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

*Id.* The court noted that "[u]nlike the Encompass policy, the Philadelphia policy [did] not expressly differentiate between UIM coverage and uninsured motorist (UM) coverage. Instead, the owned-but-not-scheduled exclusion mentions only the applicability of UM benefits with no reference whatsoever to UIM." *Id.*

Ultimately, the court held that owned-but-not-scheduled exclusions from UIM coverage are indeed enforceable, "so long as the plain meaning of the policy clearly and unambiguously excludes this type of coverage." *Id.* at 586. The court distinguished its holding from an earlier case, *Chaffin v. Kentucky Farm Bureau Insurance Cos.*, 789 S.W.2d 754 (Ky. 1990), where it held that insurers may not include provisions that prohibit the stacking of UM coverage. *Id.* at 589. In *Chaffin*, the court said, "the type of coverage at issue [was] drastically different— *Chaffin* disputed UM recovery, while Tryon seeks recovery of UIM benefits. We see no reason to conflate UM and UIM when Kentucky statutory law does not do so." *Id.* Further, the court overturned *Allstate Insurance Co. v. Dicke*, 862 S.W.2d 327, 329 (Ky. 1993), where it previously held that anti-stacking provisions were unenforceable in the UIM context as well. The *Tryon* court retreated from that

6

position, stating that "there is a significant difference between UM and UIM coverage both in legislation and in our own insurance-law jurisprudence." *Tryon*, 502 S.W.3d at 590.   Moreover, in the similar context of the regular-use exclusion, the court noted that it had repeatedly distinguished between UM and UIM coverage. *Id.* at 590-91 (citing *Motorists Mutual Ins. Co. v. Glass*, 996 S.W.2d 437 (Ky. 1997); *State Farm Mutual Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875 (Ky. 2013)).   The court concluded that "UIM coverage exclusions are not impermissible under Kentucky public policy and parties are at liberty to negotiate and customize policies to fit their own needs and desired levels of coverage."   *Id.* at 592.

Although UIM exclusions like the owned-but-not-scheduled exclusion are not *per se* unenforceable, they are still subject to the doctrine of reasonable expectations that governs the interpretation of all insurance contracts.   *See id.*   Accordingly, owned-but-not-scheduled exclusions will be enforced "so long as the plain meanings of the terms of the underlying policies are clear and unambiguous."   *Id.*   The issue before this Court, then, is whether the exclusion contained in the insurance contract between Wolz and Auto Club satisfies that test.

## C. Wolz's Policy

Once again, the *Tryon* case is instructive.   There, the Kentucky Supreme Court reviewed the Encompass and Philadelphia policies to see if Tryon had a reasonable expectation of UIM coverage under either one.   *Id.*   The Encompass policy, the court noted, contained a separate heading for UIM coverage.   *Id.* Additionally, "[i]n its definition of a *covered person*, the policy expressly state[d]

that for the insured, his family members, and other occupants, UIM coverage will not be extended to vehicles owned by Tryon but not insured for coverage under this policy." *Id.* (emphasis in original). The policy also contained a thirty day grace period for newly-acquired vehicles, after which the parties must agree to extend UIM coverage to the new cars. *Id.* at 592-93. Finally, in a separate subsection entitled "Underinsured Motorists Losses We Do Not Cover," the Encompass policy stated "that it does not provide UIM coverage for bodily injury for any covered person 'operating or occupying a motor vehicle owned by, leased by, furnished to, or available for the regular use of a covered person if the motor vehicle is not specifically identified in this policy under which a claim is made.'" *Id.* at 593. Based upon these provisions, the *Tryon* court concluded that the Encompass policy was "a clear and unambiguous manifestation of its intent to deny [UIM] coverage." *Id.*

In contrast, the court held that the Philadelphia policy did not "rebut[] Tryon's reasonable expectation of coverage." *Id.* at 594. "Unlike the Encompass policy," the court said, "Philadelphia [did] not include a separate section marking the company's position on UIM coverage." *Id.* at 593. Rather, the provision purporting to exclude UIM coverage was contained in a portion of the policy entitled "Uninsured Motorists Coverage." *Id.* Because of this ambiguity, the court concluded that while "Philadelphia intend[ed] to exclude UM coverage for vehicles Tryon owned but did not insure . . . there [was] no such clear statement with respect to UIM coverage." *Id.* In other words, the Philadelphia policy contained "nothing

8

. . . to place [Tryon] on notice that his UIM benefits [were] subject to certain situational exclusions." *Id.*

Here, the Court believes that the Auto Club policy is more similar to the Encompass policy than the Philadelphia policy. The owned-but-not-insured exclusion is located within a part of the policy entitled "Part IV – Uninsured Motorists and Underinsured Motorists Coverages." [DN 14-4 at 26 (emphasis removed).]   Under the subheading "Insuring Agreement – Underinsured Motorists Coverage," the policy states:

> 1. We will pay compensatory damages which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:
>
>> a. sustained by an insured person; and
>
>> b. caused by an accident arising from the ownership or use of the underinsured motor vehicle.

[*Id.* (emphasis removed).]   In the very next subsection, entitled "Exclusions," Auto Club states:

> Part IV does not apply, and there is no coverage for:
>
> . . .
>
> 3. Bodily injury sustained by any insured person:
>
>> a. while operating or occupying a motor vehicle owned by, leased to, furnished to, or available for the regular use of you or a resident relative if that motor vehicle is not insured for this coverage under this policy[.]

[*Id.* (emphasis removed).]   The implications of these provisions for Wolz are clear and unambiguous.   Like *Tryon*, the Auto Club policy sets apart UIM coverage and

9

its exclusions in clearly labeled, separate subsections.   *Tryon*, 502 S.W.3d at 592-93.   Like *Tryon*, the policy "explicitly states that it does not provide UIM coverage" when Wolz is injured by an underinsured motor vehicle while he is operating a vehicle that he owns but does not insure with Auto Club.   *Id.* at 593.   And like *Tryon*, "[t]his information is offered in plain language and presented boldly within the four corners of the agreement."   *Id.*

The doctrine of reasonable expectations "is based on the premise that [ambiguous] policy language will be construed as laymen would understand it." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003) (quoting *Ohio Cas. Ins. Co. v. Stanfield*, 581 S.W.2d 555, 560 (Ky. 1979)).   But "the mere fact that a party attempts to muddy the water and create some question of interpretation does not necessarily create an ambiguity."   *Id.* (cleaned up).   While the Court sympathizes with Wolz's predicament, the plain language of Auto Club's policy clearly and unambiguously excludes UIM coverage in this scenario.   Because Wolz is not entitled to recover under his Auto Club policy, Auto Club is entitled to summary judgment on Wolz's claim for UIM benefits.

### D. Wolz's Bad Faith Claim

Wolz's claim against Auto Club for bad faith must also be dismissed.   For Wolz to prevail on that claim, "(1) the insurer must be obligated to pay the claim . . . ; (2) the insurer must lack a reasonable basis . . . for denying the claim; and (3) . . . the insurer [must] either [know] there was no reasonable basis for denying the claim or act[] with reckless disregard."   *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky.

10

1993) (citations omitted).   But Wolz's claim falters at the first element, because pursuant to the owned-but-not-insured exclusion from UIM coverage, Auto Club is not obligated to pay.   "Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute." *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000).   Accordingly, Auto Club is entitled to summary judgment on Wolz's bad faith claim as well.

### IV. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED:

Defendant Auto Club Property-Casualty Insurance Co.'s motion for summary judgment [DN 14] is GRANTED.

An appropriate judgment shall issue.

CC: Counsel of Record